UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALBERT GREGORY, on behalf of himself and all others similarly situated,** | Civ. No. 2:13-6952 (WJM) |
| **Plaintiff,** | **OPINION** |
| v. | |
| **NATIONSTAR MORTGAGE, LLC d/b/a CHAMPION MORTGAGE COMPANY, and JOHN DOES 1-25,** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this putative class action, Plaintiff Albert Gregory alleges that Defendant Nationstar Mortgage, LLC d/b/a Champion Mortgage Company ("Champion"), a debt collector, failed to provide disclosures required by the Fair Debt Practices Collection Act and the Real Estate Settlement Procedures Act. Champion moves to partially dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion to dismiss is **GRANTED**.

I.   BACKGROUND

The First Amendment Complaint ("FAC") makes the following allegations, which the Court accepts as true for purposes of the instant motion to dismiss. Sometime prior to January 1, 2010, Plaintiff Albert Gregory took out a mortgage with Bank of America. FAC ¶ 14, ECF No. 12. Gregory subsequently got behind on his real estate taxes. *Id.* ¶¶ 19-20. On roughly December 3, 2010, he started making payments on his past due balance. *Id.* ¶ 21.

At some point (Gregory maintains that it was on or before September 31, 2013), Gregory's obligation was "place[d] with or assigned" to Champion, a business that "collects and attempts to collects debts incurred or alleged to have been incurred for personal, family, or household purposes." *Id.* ¶¶ 24-27.  Not long after Champion entered the picture, Gregory received a letter from Champion dated November 15, 2012 (the "November 15, 2012 Letter").  *Id.* at Ex. A. Gregory describes this letter as an "initial letter/communication concerning the past due [Bank of America] obligation." *Id.* ¶ 29.  At the time he received the November 15, 2012 Letter, Gregory had never been in contact with Champion, and he did not even know that his obligation had been transferred from Bank of America.  *Id.* ¶¶ 31-32.  The November 15, 2012 Letter states as follows:

> Thank you for placing your trust in Champion Mortgage.  We would like to welcome you to our Reverse Mortgage Servicing Department.  We will be responsible for assisting you with anything you may require regarding your reverse mortgage loan and we trust you will be pleased with our service . . .
>
> Important Notice: Per the terms of your reverse mortgage, you are responsible for the prompt payment of your property taxes and your homeowner's insurance premiums.  If you are unable to make either of these payments on time, please call our toll-free number 1-866-654-0020 to discuss your situation with our Borrower Care Associates.  Also we must be advised of any change in the condition of your property, or of an absence from your home of two months or more.

*Id*. at Ex. A.  The November 15, 2012 Letter does not mention the amount of Gregory's debt, the name of the creditor to whom the debt is owed, or the effective date of the transfer to Champion.  Gregory maintains that the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g, required Champion to provide this information. Gregory also alleges that the November 15, 2012 Letter did not include disclosures required by the Real Estate Settlement Procedure Act ("RESPA").

On May 14, 2013, Champion sent an additional letter to Gregory (the "May 14, 2013 Letter").  This letter states as follows:

> Thank you for taking the time to contact us regarding your reverse mortgage.

> We are returning the enclosed check#310 in the amount of $100.00 and check # 6884 in the amount of $100.00 to you because we are unable to process the payment at this time.
>
> The reason we are unable to process the payment at this time is your loan is in a called due status. Please contact our office to set up a valid repayment plan.

*Id.* at Ex. B. Gregory alleges that the May 14, 2013 Letter, like the November 15, 2012 Letter, did not include disclosures required by the FDCPA.

On September 25, 2013, Champion sent a third letter to Gregory (the "September 25, 2013 Letter"). This letter explains that Gregory's mortgage is in default, and it offers Gregory a variety of ways in which to cure the default. *Id.* at Ex. C. It advises: "This is an attempt to collect a debt and any information obtained will be used for that purpose." *Id.* Gregory alleges that the September 25, 2013 Letter, like the November 15, 2012 Letter and the May 14, 2013 Letter, did not include disclosures required by the FDCPA.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## III. DISCUSSION

The Complaint contains two counts. In Count I, Gregory argues that Champion violated the FDCPA when it failed to include various disclosures with its November 15, 2012, May 14, 2013, and September 25, 2013 Letters. In Count II, Gregory argues that Champion violated RESPA when it failed to provide certain disclosures in its November 15, 2012 Letter. Champion moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count I in part, and it moves pursuant to Rule 12(b)(6) to dismiss Count II in its entirety.

### A. Count I

Count I is a claim for violation of the FDCPA. Specifically, Gregory alleges that three letters—the November 15, 2012 Letter, the May 14, 2013 Letter, and the September 25, 2013 Letter—failed to comply with the FDCPA, 15 U.S.C. § 1692g ("Section 1692g"), because they did not include various disclosures. Champion does not dispute that Gregory has pled a violation of Section 1692g with respect to the September 25, 2013 Letter. However, Champion takes the position that Gregory has failed to plead a violation of Section 1692g with respect to the November 15, 2012 Letter and the May 14, 2013 Letter. The Court finds that Champion's position is well taken.

Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the

>consumer has paid the debt, send the consumer a written notice containing the amount of the debt, the name of the creditor to whom the debt is owed, [etc.]

Accordingly, if a debt collector sends a "communication . . . in connection with the collection of any debt," the debt collector must provide certain specified disclosures. While Section 1692g "does not apply to *every* communication between a debt collector and a debtor," *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010) (emphasis in original), the Third Circuit has yet to provide a bright-line test for when a "communication" is "in connection with the collection of any debt." *Cf. id.* at 384 ("Neither this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt."). However, the Third Circuit has recognized that under the FDCPA, a communication is "'the conveying of information regarding a debt' and is not limited to specific requests for repayment." *Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 n.5 (3d Cir. 2011) (quoting 15 U.S.C. § 1692a(2)). The Third Circuit has also cited favorably to two decisions from other Courts of Appeal that provide guidance on the issue. *See Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 265 (3d Cir. 2013) (citing *Gburek*, 614 F.3d at 385-86 and *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011)). One of those decisions, *Grden* held that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden*, 643 F.3d at 173 (citing *Gburek*, 614 F.3d at 385). In deciding whether a "communication" is "in connection with the collection of any debt," courts consider several factors including whether the communication demands payment, the relationship between the parties, and the purpose and context of the communication. *See id.*

In *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009), an appeal of a summary judgment ruling, the Seventh Circuit "conclude[d] that whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact. It need not be established by extrinsic evidence of what the unsophisticated consumer might think." While Gregory contends that *Ruth* prohibits a court from deciding, on a motion to dismiss, whether a communication is "in connection with the collection of any debt," a subsequent Seventh Circuit case found it proper to decide the issue at the motion to dismiss stage. *See Gburek*, 614 F.3d at 386; *accord Kelley v. Nationstar Mortg., LLC*, No. 13-311, 2013 WL 5874704, at **3-4 (E.D. Va. Oct 31, 2013).

5

Applying the applicable law, the Court finds that the November 15, 2012 Letter was not a "communication with a consumer in connection with the collection of any debt." First, it is clear that the November 15, 2012 Letter did not make a demand for payment. This weighs against finding that the November 15, 2012 Letter was a "communication with a consumer in connection with the collection of any debt." Second, the relationship between the parties was that of debtor and debt collector. This weighs in favor of finding that the November 15, 2012 Letter was a "communication with a consumer in connection with the collection of any debt." Finally, the November 15, 2012 Letter's purpose was to convey information; its purpose was not to induce payment. *See Hart v. FCI Lender Serv., Inc.*, No. 13-6076, 2014 WL 198337, at *6 (W.D.N.Y. Jan. 15, 2014) (dismissing Section 1692g claim based on letter that was "informational in nature, and does not reference an amount owed or threaten to take any action if payment is not made). Weighing the three factors together, the Court finds that the November 15, 2012 Letter was not a "communication with a consumer in connection with the collection of any debt."

Next, the Court turns to the May 14, 2013 Letter. The Court finds that the May 14, 2013 was also not a "communication with a consumer in connection with the collection of any debt." Like the November 15, 2012 Letter, the May 14, 2013 Letter did not make a demand for payment, and like the November 15, 2012 Letter, the May 14, 2013 was sent from a debt collector to a debtor. What distinguishes the May 14, 2013 Letter from the November 15, 2012 Letter is the context in which it was sent.

The May 14, 2013 Letter returned checks that could not be processed because Gregory's account was in a "called due status," and it advised Gregory to "[p]lease contact our office to set up a valid repayment plan." Simply informing Gregory that his account was past due was not enough to subject the May 14, 2013 Letter to Section 1692g. *See Bailey v. Sec. Nat. Serv. Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (informing debtor about the "current status" of his account did not constitute a communication in connection with the collection of any debt). Furthermore, requesting that Gregory contact Champion to "set up a valid repayment plan" was clearly not driven by an animating purpose to induce payment. Instead, it was an attempt to point Gregory in the right direction after Gregory attempted to partially satisfy his obligation in an improper fashion. Considered in context, the May 14, 2013 Letter resembles a "ministerial response to a debtor inquiry" as opposed to an element of "a strategy to make payment more likely." *Grden*, 643 F.3d at 173 (sending debtor a letter debtor requested identifying the amount of debt did not constitute a "communication . . . in connection with the collection of any debt"). Weighing the three factors together, the Court finds

that the May 14, 2013 Letter was not a "communication with a consumer in connection with the collection of any debt."

Accordingly, to the degree Count I is based on the November 15, 2012 and May 14, 2013 Letters, it is **DISMISSED WITH PREJUDICE**. To the degree Count I is based on the September 25, 2013 Letter, it survives.

### B. Count II

Count II is a claim under RESPA. Gregory alleges that Champion violated RESPA, 12 U.S.C. § 2605(c), when Champion failed to disclose in its November 15, 2012 Letter that Gregory's obligation had been transferred from Bank of America. Champion argues that Count II fails because Gregory does not plead that he sustained damages because of Champion's alleged RESPA violation. Champion is correct.

Title 12, Section 2605(c)(1) of the United States Code provides that "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." When 12 U.S.C. § 2605 is violated, individuals and members of a class action are entitled to recover "any actual damages as a result of the failure" to comply with the terms of the statute, as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. § 2605(f).[1]

Here, Gregory alleges that he has sustained damages in the form of mortgage payments, but he fails to allege in a non-conclusory fashion that his purported damages were the "result" of a RESPA violation. *See Corazzini v. Litton Loan Serv. LLP*, No. 9-199, 2010 WL 6787231, at *12, (N.D.N.Y. June 15, 2011) (internal quotation and citation omitted) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff."). Accordingly, the Court will **DISMISS** Count II **WITHOUT PREJUDICE**. The Court will grant Plaintiff leave to replead his RESPA claim.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Champion's motion to dismiss. Count I is **DISMISSED WITH PREJUDICE** to the extent it is based on the November 15, 2012 and May 14, 2013 Letters. Count I **SURVIVES** to the degree it is based on the

---

[1] The parties do not address "additional damages" in their briefs.

7

September 25, 2013 Letter.  Count II is **DISMISSED WITHOUT PREJUDICE**.  The Court will grant Gregory 30 days leave to file a Second Amended Complaint addressing only those deficiencies identified in this opinion.  An appropriate order follows.

                                                /s/ William J. Martini

                                     **WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 8, 2014**